We will hear argument first this morning in case 19-108, United States v. Briggs and the consolidated case. General Wall? Mr. Chief Justice, and may it please the Court, when Congress said in Article 43 of the UCMJ that an offense punishable by death may be prosecuted at any time, Congress was referring to the punishment it had provided for in the very same code. Respondents say that Congress was up to something far more novel. It was importing the Eighth Amendment's proportionality standard into the otherwise simple and predictable calculation of the time for bringing a prosecution. In at least three ways, the text says otherwise. First, the penalty and limitations provisions mirror each other. Article 120 says rape may be punished by death, and Article 43 then refers to offenses punishable by death. Congress naturally was referring in the limitations provision to the punishment it had fixed in the penalty provision. Second, Congress left no doubt in Article 18, which is the general jurisdictional provision for courts martial. It allows courts martial to impose death when specifically authorized by this chapter, and this chapter is the UCMJ. So Congress told us where to look in determining whether an offense is punishable by death to the code. Congress then made death available for rape in Article 120 and made the most serious crimes, those punishable by death, prosecutable at any time in Article 43. All of the statutory pieces fit cleanly together. Third, Congress borrowed the language of the military limitations provision from the general capital limitations provision, 18 U.S.C. 3281, where the language dates back to 1939. For the past 80 years, the executive branch and every article of free court to consider the phrase punishable by death in any context has read it to refer to the statutory punishment that old soil came with in Article 43. For those reasons, the courts have reversed on the statutory question without reaching the constitutional or retroactivity question. General, you've been talking about what Congress did, but of course the issue comes from what the court did. And I understand that the reference to punishable by death was a way for Congress, as sort of a shorthand for what we regard as the most serious crimes. Those are the ones that are not going to have any statute of limitations. But the court in Coker seemed to say that the most serious crimes, that category, punishable by death, could only include those crimes that have resulted in death and that rape can't be classified as among the most serious. Now, why doesn't that determination by the court affect how we should read the statute in this case? The reference in Article 43 refers to those punishable by death, and those are the most serious crimes, and the court has told us in Coker what that category can be. Well, Mr. Chief Justice, I agree that you could read punishable by death in either of two ways, because it doesn't answer punishable under what? Under the code or under the Constitution? If I'm right that text, history, precedent, all suggest that what Congress meant when it said punishable by death was a reference to the punishment it had picked out in the code, then I think everybody agrees that that controls the meaning of the limitations provision, regardless of what punishment a court-martial could actually impose consistent with the Constitution. And so I think if we're right about what the statute means and what Congress was referring to, there's no need to reach the constitutional question. If the court does, if the court says, well, for the first time ever, Congress looked outside the code to the Constitution, then yes, it's got to tackle the question of whether Coker applies, but the court's never applied Coker in the military setting. It consistently says that constitutional rights apply differently, and for reasons that hopefully we'll get into in the argument, I think there are good reasons here to believe that Coker does not control in the military setting. General, when else has Congress referred to a constitutional provision, and we've interpreted that as applying only as of the time Congress acted, rather than as the provision developed? I don't have a ready example in mind, Mr. Chief Justice, because of course our basic submission is that Congress wasn't looking outside the code to the Eighth Amendment. It wasn't for the first time ever saying, well, we'll let the statute of limitations go back and forth between five years and life, depending on what courts decide. It was, as Article 18 says, looking to the code. Death has to be authorized by the code. It's authorized in 120, so when the limitations provision says punishable by death, it's referring only to whether Congress had denominated it a serious offense, not whether a court could conclude that death was consistent with the Eighth Amendment. Thank you, General. Justice Thomas? Yes, General Wall, are you arguing that even if you could not, even if you accepted Coker, for example, with respect to the punishment that could be administered, would it still apply to the statute of limitation? So, Justice Thomas, to understand the question, yes, we think even if the court thinks, look, Coker means adult rape in the civilian context can never be punished with death, there is a different rule in the military. So even if Article 43 looks outside to the Eighth Amendment, we'd say for three reasons Coker doesn't apply here. First, the harms are different. Military rape can destroy a platoon, it can undermine forces' readiness, it can even damage foreign relations. So all rape is heinous, but we would say particularly so in the military. Second, there's no settled national consensus against death penalty for rape in the military as the court discerned in Coker and Kennedy. And third, this court defers to Congress' judgment on matters of military justice, and that's an overlay that was not present in the civilian context in Coker and Kennedy. Would you say the same thing if there was a firm policy not to administer the death penalty in the military, for example, that came directly from the president? Absolutely, I would, Justice Thomas, because our whole submission, or our front-line position, is that when Congress said punishable by death, it meant the same thing that phrase has always meant for the last 80 years. It meant whether it had picked out that punishment in the code and made it available. That's what showed that it thought it was the kind of serious offense that could be prosecuted at any time. One president might not want to punish death, and the president has to sign off on death sentences in the military, but that doesn't affect the congressional judgment in the code about the severity of the offense. It's just a policy judgment that can change from one president to the next, but that's not the judgment that Congress was picking out in Article 43. It was picking out its own judgment about whether a punishment was appropriate and should be available. On a separate issue, do you think there's any daylight between the meaning of the Eighth Amendment cruel and unusual punishment clause and Article 55's version? I do, as this Court has understood it. Article 55, when it came into being, was derived from the Articles of War, and it was understood the way the Eighth Amendment was originally understood, and its text shows this. It picked up barbaric or torturous punishment. It's even clearer in Article 55, because it says branding, flogging, marking, or any other cruel or unusual punishment. It's using it as a catch-all for certain types of torturous punishment, which was what the Eighth Amendment understood at the time that language came into being. Now, subsequently, the Court has interpreted the Eighth Amendment to incorporate a proportionality standard in cases like Coker and Kennedy, as you know, but no, Article 55 text fits a very separate, a very different meaning in the UCMJ that does not look to this Court's proportionality case law. Thank you. Justice Breyer? I was curious if there's anything more you want to say, there may not be, about why Coker does not apply in the military. I think the main thing I would do, Justice Breyer, is just highlight what I was talking about earlier, which was, Coker and Kennedy say that the test is whether there's an evolved standard of decency, and I don't think we could perceive that in the context of the military for two reasons. One, Congress has repeatedly authorized it by statute, and many presidents have allowed it, so it's hard to see the sort of national consensus that the Court perceived in Coker and Kennedy. And the other is just that I think the goals of the criminal law, which the Court talked about in those cases, things like deterrence and retribution, are served very differently in the military because of the military environment, the need to maintain trust and discipline, the need to achieve institutional equality, the need not to damage foreign relations. And the position of the other side, Justice Breyer, by the way, is that rape can never be punished in the military. That's what they need to prevail in this case. And I think to say that rape could never be a constitutionally permissible punishment, even for, let's say, a repeated brutal rape of a civilian in a war zone, that just does not strike me as the kind of judgment that Coker and Kennedy were talking about. So even if maybe some peacetime rapes couldn't be, it seems to me that there are at least some rapes in the military where you could punish it consistent with the Eighth Amendment. And once the Court says that, then I think even respondents could see we're right about the statute. In the civil context, there are lots of numbers gathered by different groups, and there's a very long waiting period, 18 years, 15 years between the time of the conviction and someone actually being executed. Are there similar statistics for the military? I don't know that there are, Justice Breyer, because, of course, as the briefs show, the military very rarely pursues the death penalty. The last time the military executed someone was 1961 for the rape of a civilian child in occupied Austria in the wake of World War II. So I think in terms of imposition of the death penalty, that is very rare. Of course, here the prosecutions occurred many years after the offense, and I talked to the prosecutors about that. And what they say is that that doesn't affect sort of the quality of the evidence that they can bring forward, that these were reliable cases even though they were prosecuted years after the fact, and that it's critical to be able to go after these crimes outside of what would otherwise be the five-year window. In order to make progress on rape and sexual assault in the military, it's hard to get women to report. There are pressures inside the military, and they need to be able to prosecute these crimes to continue to get the numbers to go down. And the numbers have been going down, but part of that is because until very recently they didn't face a statute of limitations. So even if they found out about it years after the fact, they could still bring a prosecution as long as the evidence was reliable. Thank you. Justice Alito? There are some patterns of interpretation that may work against you in this situation, such as the principle that statutes of limitation are to be narrowly interpreted and the rule of lenity. Could you explain why you think the statutory language is clear enough to overcome those? Sure, Justice Alito. So as you say, the first thing I would say is just we don't see any grievous ambiguity here, and neither has any Article III court that ever looked at it. The first court ever to read it another way was the cast in Mangas. Everybody has long understood this, both because of the parallelism between Article 43 and 120, the punished and punishable, the Article 18 language I've talked about, and the history. The fact that this phrase had an understood meaning in the general criminal context, and Congress picked up on it. So those are all textual, contextual clues, and of course also the fact that Article 55 separately deals with limits on what punishment may be imposed. So it would be very odd for Congress to have obliquely imported it in Article 43 when they have a separate article of the code that deals with it. So for all those reasons, I don't think it's previously ambiguous, even if the court disagrees. I think constitutional avoidance should break the tie. When it is not a great fit, because we're not talking about the scope of a criminal prohibition, everybody agrees that the conduct here was rape. And repose seems an odd candidate too, since the whole point of Article 43 is to make it prosecutable at any time. I think if we're looking to break a tie, and obviously we don't think it's that close, the right tiebreaker is to say if you read the code our way, you don't have to get into any of these Eighth Amendment questions that the court has long reserved. Another question, it's unrelated. What do you think we should say about our jurisdiction under 28 U.S.C. 1259? Justice Alito, I think in graining the case, the court recognized that in all of these cases, the CAF reversed convictions. The CAF held in each case that under Mangahas, the five years are not unlimited. Now, to be sure, it only revisited that question in Daniels. It relied on Mangahas. And in Daniels, it just relied on Collins. And Collins relied on Mangahas. So it is true that they didn't decide the question here. They relied on their earlier decision in Mangahas. But you grant those kinds of cases all the time, where some court relies on a rule that's announced in an earlier case. That's still part of the case. They had to say that there was a five-year statute of limitations under Mangahas to reverse the convictions. And then, obviously, Briggs additionally decided the retroactivity question. So that issue was also presented in Briggs. So I think it's clear that you've got jurisdiction over the issues in all of the cases under 1259. Thank you. Justice Sotomayor? Mr. Wall, just to be clear, I wasn't quite sure I understood your answer to Justice Thomas. The statute of limitations question is separate from the COCA question, isn't it? You could have a statute of limitations that is not fixed, even if we were to decide that the Eighth Amendment applied to the military, correct? We absolutely agree, Justice Sotomayor. Those are two separate judgments. We think that Congress made both of them clear. And even if it's not allowed to impose the death penalty under the Constitution, it still said it thought this was this kind of serious offense that should be prosecutable at any time. I told Justice Thomas to be saying, can you win even if we accept that COCA applies in the military? I may have misunderstood the question. Our answer to that is yes. But I agree with you. The court doesn't need to get there if we're right on the statute. That's why I thought I wasn't quite sure. You went straight into the COCA question, and I wasn't quite sure whether you meant to answer yes or no to him. Number two, it seems to me that almost any serious crime, including an assault that causes serious physical injury, could be an impediment in combat situations and create great international disputes. For example, if one soldier attacks another in a combat zone. So, I don't know why or how you have justified the explanation why death is proportionate in that situation when life without parole, why life without parole wouldn't be sufficient. Well, I take the point, Justice Sotomayor, and I think it's fair that all crimes, in some sense, can undermine unit cohesion and military discipline. But I think rape is especially different when you talk to the prosecutors, because it divides up platoons and units, oftentimes in a way that other crimes do not. But what do I make of the fact that it's been decades, but decades, since a death penalty has been imposed or sought in a rape case in the military? It's been decades since they've sought it for premeditated murder in the military, but I don't think anyone, even respondents, would say that makes a difference to the constitutional analysis, that it's somehow off the table, the death penalty for even premeditated murder in the military. It is true that they rarely impose it, but none of that matters to Congress' judgment that the offense is so serious that it should be prosecutable at any time. And just to finish my answer to your earlier question, it's not just the way it divides platoons. It's not just the pressures against reporting, which are true of rape and sexual assault and less true of other offenses. It's also the effect on foreign relations and national security. Yes, an attack inside a war zone on another soldier might, in theory, affect our foreign relations, but not nearly so much as the rape of a civilian child. And I go back to the Austrian example in the wake of World War II. I think to prevail, they've got to say that even a rape like that can't be punished with death under the Eighth Amendment, and I can't see on what objective measure they would get there. Thank you, counsel. Justice Kagan? General, if I could take you back to your statutory interpretation. You've pointed to a number of ancillary provisions, I'll call them, and said that they provide hints. But the main provision here is Article 43 and its statement that any offense punishable by death. And that term is unqualified. It doesn't say any offense punishable by death under the UCMJ, which is really how you're reading it, as if those three words were in the statute. And I'm wondering why we should read it like that. Usually, we try not to add words to a statute. So if we say any offense punishable by death, it would suggest any offense punishable by death under the UCMJ. Justice Kagan, I have to say that I have a very different reaction. I think you have to add words either way. Saying it's punishable doesn't tell you whether it's punishable under the code or punishable under the Constitution. And it seems to me that... Well, it's punishable just under anything. If it's punishable or it's not punishable. And we don't look to the source of law that tells you whether it's punishable or not. We just look to the question, can you put somebody to death for this? Well, I have to say just, I think that assumes away the problem, right? Which is there are two different ways to read punishable. And I think it's a bit much for the other side to say there's a plain meaning understanding since no Article III court had ever read it that way in the 80 years up to Mangahas. I mean, there are six circuit court decisions from four different circuits, both before and after 1986. There's not a width of another interpretation of this. Nobody even makes the claim. Well, suppose this, General. Suppose that Congress passed a law tomorrow and it was not a law that was put in the UCMJ. It was in some entirely different part of the federal code. And it just said, rape shall not be punished by death under any federal law. So would that change the outcome? Justice, potentially it might. I mean, if Congress itself put in a provision saying military rape could not be punished by death, then you would have a straight up conflict between that provision and Article 120. And it'd be hard to figure out exactly what judgment Congress is making about the severity of the offense. Well, I guess the point of the question is if we're going to look outside the UCMJ, as in that hypothetical, you know, why stop at other parts of the U.S. code? Why not also go to the Constitution? Why not consider just whether the punishment is available under the law as under all the law as it's given to us? Because the relevant decision maker is Congress. So when Congress says punishable by death, which punishment is it talking about? Its own judgment or the constitutional judgment? Statutorily, it's its own judgment. But if we introduced another provision where it said on the one hand you could punish it with death and on the other you couldn't, there'd be a question about what Congress's own judgment was. That would be raised under the statute. But none of this gets us to saying that Congress somehow looked outside the statute. I mean, on their basic theory, the same Congress that said rape is so serious it should be punished by death in Article 120, in the limitations provision said, well, we're just going to tie it to judicial judgment and let it go back and forth between five years and life depending on what courts say. That isn't normally the way we'd read limitations provisions. And as I tried to say at the top of the hour, there's a lot of textual, contextual, and Thank you, General. Justice Gorsuch. Good morning, General. Let's suppose that this court had clearly, definitively, unambiguously, absolutely held that punishing rape by death would violate the Constitution in the military context. And it would not be lawfully punished, that crime would not be lawfully punished by death. Would the position of the government be any different? It would matter to our backup argument, but not our frontline statutory position, Justice Gorsuch. Our frontline statutory position is Congress was referring to the punishment it had chosen. And even if the courts decide that that punishment is taken off the table by the Constitution, that's just a matter of what you can do at an actual court-martial. It does not affect the judgment that Congress made for limitations purposes. Separately, but relatedly, the government in its brief makes a rather lengthy and interestingly persuasive argument that Congress did not intend for the limitations period to turn on the courts or anybody else's judgment. But I'm not sure I understand whether the government thinks that without reference to such inferences about congressional intent, it might prevail. Can you help me on that? Sure, Justice Gorsuch. I haven't said a word, or I have tried not to so far, about congressional intent or the Senate report or any of the rest. I think it's clear what Congress is doing. I have noticed a distinct difference between the argument today and the argument in the brief. I am perfectly happy to have the court proceed only on the text and structure of the code itself. I think the parallelism between 43 and 120, the plain text of Article 18, which tells you death has to be authorized by this chapter, to where you're looking for the requisite authorization for punishment, is the code. I think the history under 3281, when they try to distinguish the cases, I don't think persuasively, but importantly, there's nothing on the other side of the ledger. If you add all that up and just interpreting statutes the way we normally do, I think we've clearly got the better interpretation of the language of Article 43. Thank you, General. Justice Kavanaugh? Thank you, and good morning, General Wall. I want to follow up on your answers to Justice Kagan. I'm confused whether you think that the relevant interpretation of the statute is punishable by death under the UCMJ or punishable by death under federal statutory law. I understood you originally to be saying under the UCMJ, but then in response to Justice Kagan, it sounded like you were broadening that out and saying punishable by death under federal statutory law. No, I mean under the code, Justice Kavanaugh, and I may have been a little unclear. When you say the code, can you be specific? I think the UCMJ, and that's what the plain text of Article 18 says, and I may have been a little unclear with Justice Kagan. Let me just be specific then. If Congress passed a statute outside the UCMJ that outlawed the death penalty for all federal crimes, including in the military, you would still say that this offense and other offenses are punishable by death under Article 43? I think I would. It would be a harder case, but as I think about it more, Justice Kavanaugh, I think that what Article 18 indicates and what the history indicates is that there was a judgment they were picking out in the code, and as long as that judgment in Article 120 remained unchanged, I think the limitations period would still be the same. It would be unlimited. It would be a harder case, but I do think that putting it outside the code could potentially make a difference. If they put it inside the code, then I think it could unsettle our statutory argument. Importantly, there's nothing like that here. There's nothing even outside the code that indicates as a statutory matter that the death penalty was off the table at the time of these offenses. I'm just curious that it doesn't say punishable by death under this chapter, and so that raises an ordinary meaning question, but I think you've answered that previously. I wanted to turn to the constitutional issue then. Do you think there's any Eighth Amendment limit on Congress's power to make offenses in the military punishable by death? Justice Kavanaugh, we haven't tried to make – I think you could make arguments that the Eighth Amendment doesn't apply at all. That's what Congress seemed to think when it enacted Article 55, and you could argue that even if it applies, it only applies to torturous or barbarous punishments consistent with Article 55. It doesn't go further. We haven't tried to make those arguments here because, frankly, we don't need them to prevail. All we need the court to say is that even if the proportionality analysis of Coker and Kennedy applies, the balance is just different, and one thing, just to say a little more than that, the balance is different and the test in the military is less restrictive? I think you could say just two things that follow naturally from the court's cases. You could say the balance is different because the needs are different, there's no national consensus, and the goals of the criminal law are served differently, and in the military context, you defer to Congress's judgments about military matters, including military justice. I think those are the only two propositions you would need. Thank you, General Wall. A minute to wrap up, General? Sure. Thank you, Mr. Chief Justice. Just to sum up, respondents asked this court to say not one but two implausible things. First, that when Congress used the phrase punishable by death in 1986, it ignored both its own judgment about what punishment was appropriate and the phrase's settled meaning in operation and other limitations provisions. No Article III court's ever read the phrase that way, and Congress is not upending how limitations provisions normally work. Second, respondents then need this court to say that rape in the military is never punishable by death, no matter how vulnerable the victim, no matter how many rapes are victims, no matter how sadistic the crime, no matter how the crime affects the military or foreign relations, and no matter that the death penalty for military rape dates to the mid-1800s. If the court reaches that constitutional question, it should not undo a long history of deference to Congress's judgments about military justice. Thank you, General. Mr. Bladdock? Mr. Chief Justice, and may it please the court, since 1953, every court to consider it, including CAF, has correctly understood Article 55 of the UCMJ to reflect Congress's specific judgment that service members should receive the same protection against cruel and unusual punishment that civilians enjoy under the Eighth Amendment. Thus, after this court held in Coker that the Eighth Amendment forecloses the death penalty for rape, every military court to reach the issue held that the same result applied automatically to courts martial, including CAF's predecessor in June 1986. When Congress eliminated a statute of limitations for any offense punishable by death just five months later, it was therefore clear that rape was not such an offense because the UCMJ itself foreclosed the death penalty. Indeed, that was still clear for over a decade after the 1986 Amendment, as military courts repeatedly held that rape was subject to a five-year statute of limitations. And perhaps most importantly, that conclusion was still clear to Congress in 2003, when it provided that where the victim was a minor, rape by a minor was not permitted until the victim's 25th birthday. If Congress believed that rape was punishable by death under the 1986 Amendment, the 2003 reform was not just unnecessary, it would have shortened the statute of limitations. Congress finally eliminated a statute of limitations for all rape offenses in 2006, so that the military may today try any such offense committed since then. But all three of the offenses at issue here predated that amendment, which has no language suggesting Congress intended it to apply retroactively. Mr. Wall spent much of his time extolling the virtues of constitutional avoidance and deference to Congress's considered judgments. We agree that this court can and therefore should avoid the constitutional question by deferring to Congress's judgment in 1950 to protect service members from cruel and unusual punishment to the same extent as civilians, and in 1986 to only Mr. Counsel, why would Congress want to make it impossible to prosecute rape at all after five years, no matter how heinous, no matter the consequences to military discipline or international relations, simply because this court held that you couldn't impose the death penalty for it? Mr. Chief Justice, I'm sorry. I was just going to say the statute refers, of course, to punishable by death as a reference, but the two concepts, the statute of limitations and the constitutionality of capital punishment are two distinct concepts. We certainly agree, Mr. Chief Justice. I think it's worth putting in context that the 1986 amendment was almost doubling the statute of limitations for rape, that as a civilian offense under the pre-86 code, rape carried only a three-year statute of limitations. The 1986 amendment extends that to five, and again Mr. Chief Justice, I think the timing is the key here. Congress changed the provision in the UCMJ at a time when it was not just clear that this court believed rape could not be punished by death under the Eighth Amendment, but right after the Court of Military Appeals had held that it couldn't be punished by death even under the UCMJ. And so for all that the government relies upon, adding the words under this chapter to Article 55, we end up in the same place. Well, COCR concerning the death penalty itself and our statute here on statute of limitations, they seem particularly distinct in that none of the analysis in COCR applies at least directly to the military context. There is no societal evolution with respect to whether or not rape in the military could be punished by death, no consensus about it. In other words, the analysis in COCR seems at least consistent with the notion that the military context continues to be distinct. So why should that judgment about the civilian context be directly applicable on a question quite different from the punishment that can be meted out, the statute of limitations question? I think the answer, Mr. Chief Justice, is because that's what Congress provided in Article 55. We don't dispute that Congress could have provided different rules. We don't dispute that after COCR, Congress could have reaffirmed that it wanted the death penalty available as a punishment for rape in the military, notwithstanding COCR. But against a backdrop where all Congress had said was that the Eighth Amendment applies to bar the death penalty for rape, Congress's only judgment that we have, the only clear evidence we have, is that Congress understood that it wanted to tie the statute of limitations issue to punishments available under the code. Thank you, Counsel. Justice Thomas? Yes, Counsel. How do you know that Congress meant to track the court's actions? We have two different pieces of evidence, Justice Thomas. Of course, as we note on page 37 of the red brief and footnote 14, when that language was added to the Articles of War, the precursor to the UCMJ in 1920, it was added with the specific purpose of aligning the military code that enforced the Constitution. But Justice Thomas, more importantly, we have 70 years of evidence that the UCMJ did not enforce the rules in Wapler in 1953, holding that that was Congress's intent. Congress has amended the UCMJ dozens of times since those rulings and has shown no disagreement with them. It has never touched Article 55. On a separate issue, let's assume that you leave all the language in place in the statute, but there is a uniform policy both at the Pentagon and in the White House for many years not to call for the death penalty in the case of rape. Would that policy in some way trump the language in the statute? Not in our view, Justice Thomas, because again, we think that the natural plain reading of the statute is whether the offense is punishable by death, not whether individual cases are subject to the death penalty. No, I'm talking about a universal policy across the administration and in the military that they would never ask for it. Let's say it's the death penalty. It's not punishable by death, but it's still on the books. I take the point, Justice Thomas. And again, I think the critical point is what Congress has decided. And so in this context, even if the president were to promulgate such a rule, of course, a future president could revoke it, whereas the statute would require an amendment. And we think that Article 43 incorporates at a minimum offenses that Congress by statute has not just authorized the death penalty as a punishment, but has contemplated that death is available as a punishment. That's a legislative determination in our view, Justice Thomas, not an executive one. Thank you. Justice Pryor? Why would Congress have wanted to adopt your interpretation? Prior, there was first what seemed to be no statute of limitations. Now, suddenly, because of a case that really didn't have to do with rape, I mean, it did with the death penalty and rape, but it didn't have to do with statute of limitations. Now, suddenly, the intertwining of the statutes here produces a five-year statute. Then when they work that out, they go back to no statute of limitation. I mean, why would Congress have wanted to do that? So respectfully, Justice Pryor, I think that misappreciates the history here. Under the UCMJ from 1950 to 1986, and the government does not dispute this, the statute of limitations for rape was only three years. That was true across the board, no matter the statute of limitations. Congress went from three years, from 1950 to 1986, to five years, from 1986 to 2003, to the victim's 25th birthday in cases of rape of a minor, to 2006 where it got rid of the statute of limitations altogether. It's the government, Justice Pryor, whose position requires you to believe that Congress went up and down, that Congress, after eliminating a statute of limitations in 1986, somehow reimposed one for cases against minors in 2003. That's the argument that I think is completely lacking. I know that this may be only a very few people, perhaps me, who find this sometimes helpful, but did you, during all this period, find anything in legislative history, or in presentation by the military to Congress, or in articles in the military that said this is a good idea to have the statute of limitations work this way, to cut it down, in effect, the law? No, Justice Pryor. I think that only reinforces our position that Congress was not thinking specifically about rape at all in 1986, and that when it finally is thinking specifically about rape, as it clearly was in 2003 and 2006, both of those statutes proceeded from the assumption that the law on the books was that the statute of limitations was five years. Otherwise, there would have been no need for either the 2003 amendment, in cases where the victim was a minor, or the 2006 amendment, which added rape to the list of offenses for which there can never be a statute of limitation. So again, I mean, whether we look to legislative history or not, we end up in the same place, which is the actual evidence on the books, the statutes Congress actually wrote, work in a straight, logical line, on our view, and don't on the government. So did you find something, maybe the other side would be the ones who have looked for it, or been able to find it, where a lawyer in the military told his bosses, oh, you know, this is rather interesting. It brings the statute of limitations for rape back down to five years, which we've long thought it should be. Well, so Justice Breyer, again, I don't think on our view there was any moment where anything reduced the statute of limitations for rape. If anything, the 1986 amendment extended it from three years to five years. And you don't have to take my word for that, Justice Breyer. In the Moore case, in 1990, the Navy Marine Corps Court of Military Review observed that the 1986 amendment changed the statute of limitations from three years to five years. And the Air Force Court reached the exact same conclusion, three years later, in the Bottino case. So again, I mean, the government has lots of policy arguments in its favor. We have statutory text and case law suggesting that at the time, everyone understood it the way that we do. Thank you. Justice Alito? Suppose someone in the military commits a murder, but this individual has diminished mental capacity so that it would be unconstitutional under Atkins and related cases to impose the death penalty. Would that crime be an offense that is, quote, punishable by death? Yes, it would, in our view, Justice Alito, because the offense in that case is punishable by death, even if the offender is not. And that's where we disagree with the government about all of the cases it purports to rely on. In every single case that government has cited to you, the underlying offense remained punishable by death. That's what makes this case different. Why isn't the offense what that individual did? The crime with which that individual would be charged? So it's the offense... And that offense would not be punishable by death by virtue of the characteristics of that particular offender. So Justice Alito, if you had, for example, a juvenile offender or a diminished capacity offender, in that context, they've still committed a death-eligible offense. That is to say, they've still committed an offense that is defined as capital murder or capital felony murder, and it's only the circumstances of their particular case that takes the death penalty off the table. Congress chose the words, Justice Alito, offense punishable by death. It's not a separate offense when you charge capital murder against a juvenile or a diminished capacity offender. It's just a separate charge based on their capacity. Throughout history, there have, unfortunately, been many instances in which occupying armies have gone on rape sprees and have raped many, many women in the territory that they are occupying. Suppose that were to happen again. Do you think it's settled under our case law that the death penalty could not be imposed on members of the military who engaged in that sort of practice? I think it's settled under Article 55 that if the charge is rape implicitor, COCR, as applied to the military, forecloses the death penalty. But Justice Alito, if I may, and this is where I... You think that's what Congress intended? Well, if I might, Justice Alito, I think it's worth pointing out that... It's hard to imagine, and it would be the American military doing the sort of things that were done, for example, in former Yugoslavia and many other examples that could be cited through history. But do you think that it's important to keep in mind that we are taking the death penalty off the table for offenses like that? So what I was going to say, Justice Alito, is there are separate offenses under the UCMJ that could be charged in those circumstances. Rape as a war crime, aggravated rape as a war crime, could be charged under different provisions of the UCMJ. And so when Mr. Wall says our position requires this court to take that off the table, frankly, he's just wrong. The question is whether rape simplicitor, with none of those extenuating circumstances, charged solely under Article 120, is foreclosed by COCR. And Justice Alito, I think Congress's choice in Article 55 was to say, yes, service members, you might commit heinous crimes, but just like defendants in our criminal civilian justice system, we're going to protect you to the same extent by the Eighth Amendment. That was Congress's choice to make. Well, what is rape simplicitor? So this court... I mean, I think we've had examples, Justice Alito, where the death penalty remains available, for example, for rape that results in death. We've had examples, for example, Mr. Wall has a hypothetical about rape as a war crime. That is not what was charged here. The military has the separate capacity to charge war crimes under different articles of the UCMJ. And where the laws of war recognize the death penalty for that charge, to pursue the death penalty in that case, Justice Alito, we would not suggest that case was settled by COCR. But whereas here, there is no charge under those provisions, where it's simply under Article 120, which I should say Congress has not... never sort of re-enacted with the death penalty after 1950 before the respondent's offenses, we think COCR through Article 55 covers the case. Thank you, counsel. Justice Sotomayor? I will pass. Thank you. Justice Kagan? Mr. Vladeck, if I could take you back to the government's textual argument, and as I understand it, it goes something like this. It says, if you look at Article 43 alone, there is an ambiguity there, because it says, any offense punishable by death, but it doesn't say punishable under what law. Is it under the code alone? Is it under all federal statutory law? Is it under the Constitution as well? It just doesn't say. And then General Wohl said, so we look to surrounding context, and we find in Article 120, in Article 18, that it supports the idea that it's really the code alone that Congress was referring to. So what's your response to that? So we have two responses, Justice Kagan. The first is, even on that reading, the code alone includes Article 55. And so even if we were to read the text to add the words that government would have us add, we end up in the same place, because Article 55, as it has been uniformly interpreted for 70 years, applies coker to courts martial. But Justice Kagan, second, and in any event, even if the court thinks that the text is ambiguous, again, the canons, as Justice Alito pointed out in his question to Mr. Wohl, work against the government here. The government needs the text to be clearly in its favor to prevail here. And I think if the text is ambiguous, there are compelling reasons to interpret it, one, in favor of repose, two, to avoid the Eighth Amendment question, and three, in favor of lenity. And so I think whether you could— Well, why—it seems as though you don't have all the canons on your side. On the opposite side is the canon of constitutional avoidance, that your interpretation requires courts to decide the constitutionality of a punishment at the outset of routine criminal proceedings. I mean, this is a good case where we—a good example where we would have to decide how Coker and Kennedy applied to the military just to, you know, decide a pretty routine criminal case. So doesn't that cut against you? I don't believe so, Justice Kagan, because I actually think Congress has decided that. That is to say, I don't think it is a difficult inquiry, as all the military cases we cite in our briefs suggest, for the military courts to decide whether this court has answered, as an Eighth Amendment matter in a civilian case, whether the death penalty is available for a particular offense. That is the only question Article 55 requires the courts to ask in this context, and I think it's an easy question to answer if you agree with the military courts, which have uniformly for 43 years interpreted Article 55 to automatically apply Coker's interpretation of the Eighth Amendment to our service members. Thank you, Mr. Vladeck. Justice Gorsuch? Good morning, Mr. Vladeck. As I understand it, and you can please do correct me if I'm mistaken, both sides agree that when we're interpreting the term punishable by death, nothing turns on and we shouldn't look to facts outside of the indictment or the complaint or the statute. So it doesn't matter, for example, whether the defendant himself is being charged with or whether the government seeks the death penalty or obtains it. That's exactly right, Justice Gorsuch. Okay, so if we don't look outside the four squares of the indictment and the statute for facts that might bear on the question what's punishable by death, why would we look outside of it for purposes legally? I think, again, Justice Gorsuch, the answer is because Congress has instructed us to do so, and indeed, even on the government's reading, there would still be a... Why wouldn't Congress have wanted us... If you're saying Congress didn't want us to do the legal, then how do we know Congress didn't want us to do the factual examination outside the four corners of the statute indictment? So I think the best answer, Justice Gorsuch, is because of the words Congress chose. That is to say, Congress did not ask whether this particular offense or this particular offender can, in fact, be punished by the death penalty. It only provided whether the offense is subject to the death penalty. And I think the natural reading of that text is to ask whether the underlying statutory charge is one for which both Congress has authorized capital punishment and for which that punishment is legally available. That comports with the ordinary meaning of the term punishable by. All right, well, let me try it another way. If we agree it doesn't matter whether the individual is actually going to ever face the death penalty, let alone whether the government would even obtain it, why do we look to the constitutional requirements? That's just another way of putting the same question. But if you agree it's completely irrelevant, in at least some circumstances, whether the defendant's ever going to face the death penalty, why not in all circumstances? So, Justice Gorsuch, I think Congress could have provided that. Congress could have said, you know, it doesn't matter whether the death penalty is possibly on the table. And if I may, Justice Gorsuch, Congress has said that with regard to particular enumerated offenses, the list of offenses that comes before the catch-all term, offense punishable by death. Under Article 43 today, there are nine such offenses, including rape. Mr. Vladeck, I have one other question. Let's say we disagreed with you about COCR and that we don't read it as expressly addressing the military context. Justice Kennedy thought it didn't some time ago. Let's just hypothesize that we agree with him, that it's an open question. Then where does your argument stand? Well, then I think this court would have to decide the question as a matter of first impression because these are criminal defendants on a direct appeal who are entitled to make any claim based on existing law that's available to them. But again, Justice Gorsuch, I don't think this court has to reach that question. I think Congress has done it for us. Thank you. Thank you. Justice Kavanaugh. Thank you, Mr. Chief Justice. Good morning, Mr. Vladeck. On your Article 55 argument, which you're hanging a lot on, obviously, the government responds that Article 55's generalized bar on various punishments cannot reasonably be interpreted to forbid a punishment that the UCMJ elsewhere expressly authorizes. In other words, that reading the two provisions together, it wouldn't make sense, at least the government argues this, it wouldn't make sense to say, oh, it's expressly authorized as a punishment in one provision, but we're going to interpret the language in another provision to prohibit what's expressly authorized in the other provision. Can you respond to that? Yes, I think there are two responses, Justice Kavanaugh. The first is the government's position requires ignoring the timing here. At the time Article 55 and Article 120 were originally enacted, they were perfectly consistent. This court was 27 years away from holding in Coker that the Eighth Amendment forbade the death penalty for rape. And so I don't think the government's argument carries the weight it thinks it does when we go back to 1950 when the statute was enacted. But more fundamentally, it was three years after the statute was enacted in 1953 that the Court of Military Appeals in Wapler read Article 55 directly contrary to the government's position, not as simply prohibiting particularly barbaric methods, but as reflecting that Congress certainly intended to confer as much protection as that afforded by the Eighth Amendment. Justice Kavanaugh, if Congress had come back after Wapler or after Coker and said, we understand that, but we are still reenacting the death penalty for rape, this would be a very different case. But it never did. That is to say, the statute Article 120 that was at issue in all three of the respondents' cases was unchanged between 1950 and when those offenses took place. I think your Article 55 argument rests, but correct me if I'm wrong, rests on a premise that Congress, when enacting Article 55, assumed that all decisions of this court in the civilian context, barring capital punishment for certain offenses, would automatically apply through Article 55 to the military context. Do you have any support that Congress actually thought that, or how would you respond to that general query? I don't think there's any moment where Congress said particularly that statement, Justice Kavanaugh, but I do think it comes through both in 1919, when the cruel, unusual punishment language was added to Article 41 of the Articles of War, and that was just nine years after this court's foundational Eighth Amendment decision in Weems, and in 1950, when the USMJ was being debated, and everyone understood that the purpose was to protect service members to the same extent as civilians. Justice Kavanaugh, there were no caveats, there were no qualifications, and I think the government's reading of Article 55 requires some evidence that Congress didn't mean to do that, and frankly, it has none. Thank you, Mr. Vladeck. Mr. Vladeck, you can take up to three more minutes. Thank you, Mr. Chief Justice. I'd like to close briefly just by reflecting on the stakes of these cases. The government concedes that at most, its reading would allow it to try a closed set of crimes committed before 2006. Indeed, across its six briefs in these cases, the government has only been able to identify four cases by name, including these three. On the flip side, three different courts have already rejected efforts by previously convicted service members to enforce Capp's decision in Mangahass retroactively through habeas, holding that it does not satisfy either of the exceptions to finality that this court identified in Teague v. Lane, and the government hasn't identified any other pending prosecutions or direct appeals that would turn on the outcome here. None of that, of course, bears directly on the answer to the questions presented. It simply underscores why affirming Capp's unanimous decisions below, in addition to being the correct outcome, won't open any floodgates. And if I may, I think it is worth stressing just how much violence the government's position would do to decades of settled precedent in the military. The Capp has held since 1953 that Congress, in Article 55, meant to extend the protections of the Eighth Amendment to service members. There are four other provisions of the UCMJ that the Army Defense Appellate Division notes in its amicus brief that likewise extend by statute these constitutional protections. The Capp and its predecessors have held since 1980 that COPER applies to the military. The government does not discuss these cases. It simply suggests they are no-never mind. And given the textual arguments in our favor, given the history of the statute and what Congress clearly understood in both 2003, when it changed the statute of limitations for rape where the victim was a minor to the victim's 25th birthday, and in 2006, when it changed the statute of limitations so that there would never be a statute of limitations for any rape, it would seem like a remarkable amount of hindsight to read into the 1986 statute in intent to override all of these decades of settled precedent. For those reasons, we believe the decisions below should be affirmed. And if there are no further questions, Mr. Chief Justice, I thank the Court for its time. Thank you, Counsel. General Wall, you have three minutes for rebuttal. Three basic points. Justices Kagan and Gorsuch, in response to your questions pressing at Respondent's so-called plain meaning argument, I didn't hear Respondent's counsel give any answer to the parallelism in the language between Articles 43 and 120 or the express language of Article 18 that points to whether death is authorized by the code, and that's the UCMJ. Respondent's counsel did say that on the history, he takes issue with some of the circuit court decisions, but I'd encourage the Court to go back and look at decisions like Coon, Kennedy, Manning, Ely, Payne, Califone. None of them turned on the reason for the unconstitutionality of the punishment. They all, as a matter of the language, look to the statutory punishment fixed by Congress. All of that points to the notion that punishable by death means the judgment that Congress made in the UCMJ, and so to revise my answer to Justice Kagan somewhat, I think Congress would need to make a contrary judgment in the UCMJ to affect the meaning of Article 43. When pressed, counsel went two places. The first was the canons, but as I tried to explain, I don't think there's any grievous ambiguity when you take into account the text and the contextual clues that Respondent's really haven't grappled with, and the canons, as I tried to say to Justice Kagan, point in both directions, and the most powerful canon, I would say, is constitutional avoidance and not getting into these long, reserved, and difficult Eighth Amendment questions. My second point is I don't think it would do any violence to military law to read the code that way. Will and Brang existed side by side with Article 55 for quite some time, and when Justice Thomas pressed Respondent's counsel on the meaning of Article 55, he turned to the military courts, not text and history, but if the Court looks at those cases, they don't have any meaningful analysis of the Eighth Amendment, and in any event, they would just return us to the question of what the Eighth Amendment requires in the military setting. Finally, on that question, Justice Alito, Respondent's counsel, I think correctly acknowledged to you that to prevail, he needs the Court to endorse the proposition that death penalty is never a constitutionally permissible punishment for rape inside the military. In our view, that doesn't accord with the consistent congressional judgment. It doesn't accord with the executive branch judgment. The needs and the harms are different in the military, and of course, this Court has routinely deferred to the political branches that are charged under the Constitution with supervising the military. The last point, just to answer the stakes of the litigation, I agree with Respondent's counsel that they're high. The question here is whether three convicted rapists will go scot-free inside the military. They should not under a natural meaning of Article 43, and in the process, this Court should not unsettle how statutes of limitations work, and it should not take the fairly radical step of extending Cooper and Kennedy into the military context. Thank you, Mr. Chief Justice. Thank you, General. Mr. Blattock, the case is submitted.